1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
ALEX J. TRAMONTANO (276666)
FERDEZA ZEKIRI (335507)
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com
zekiri@whafh.com

*Attorneys for Plaintiff*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN O'DELL,<br><br>Plaintiff,<br><br>v.<br><br>PACWEST BANCORP, TANYA M. ACKER, PAUL R. BURKE, CRAIG A. CARLSON, JOHN M. EGGEMEYER, C. WILLIAM HOSLER, POLLY B. JESSEN, SUSAN E. LESTER, ROGER H. MOLVAR, STEPHANIE B. MUDICK, PAUL W. TAYLOR, and MATTHEW P. WAGNER,<br><br>Defendants. | Case No.  **'23 CV 2089 BEN DDL**<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Ryan O'Dell ("Plaintiff"), by his attorneys, makes the following allegations against PacWest Bancorp ("PacWest" or the "Company") and the members of the Board of Directors of PacWest (the "Board" or "Individual Defendants," and along with PacWest, collectively referred to as the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed acquisition of PacWest by affiliates of Banc of California, Inc. ("Banc of California"). The allegations in this complaint are based upon the personal knowledge of Plaintiff as to himself and upon information and belief, including the investigation of counsel and review of publicly available information, as to all other matters stated herein.

## INTRODUCTION

1. This is an action brought by Plaintiff to enjoin a transaction detailed in the Agreement and Plan of Merger (the "Merger Agreement") entered into by PacWest, Banc of California, and Cal Merger Sub, Inc. (a Delaware corporation and wholly owned subsidiary of Banc of California ("Merger Sub")). Under the Merger Agreement, Banc of California, and PacWest will combine their respective businesses through a series of mergers ("Proposed Transaction"). Pursuant to the Merger Agreement, in the first merger, PacWest shareholders will receive 0.6569 shares of Banc of California common stock for each share of PacWest common stock owned; and in the second merger, each PacWest preferred share will be converted into the right to receive one share of a newly created series of preferred stock of Banc of California (the "Merger Consideration"). The Board has unanimously recommended to the Company's shareholders that they vote in favor of the Proposed Transaction at the special meeting of the PacWest shareholders. PacWest shareholders will own approximately 47% of the post-transaction entity. Banc of California shareholders, along with other investors of Banc of California, will own

53% of the post-transaction entity.

2.   In order to convince PacWest shareholders to vote in favor of the Proposed Transaction, on August 10, 2023, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the Securities and Exchange Commission ("SEC"), as amended on September 29, 2023; October 16, 2023; and October 19, 2023.  The Registration Statement violates Sections 14(a) and 20(a) of the Exchange Act due to noncompliance with Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9).

3.   Defendants have failed to disclose certain material information necessary for PacWest shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Registration Statement materially incomplete and misleading.

4.   In particular, the Registration Statement contains materially incomplete and misleading information concerning the financial forecasts for the Company that were prepared and relied upon by the Board in recommending to the Company's shareholders that they vote in favor of the Proposed Transaction.  The same forecasts were used by PacWest's financial advisor, Piper Sandler & Co. ("Piper Sandler"), in conducting its valuation analyses in support of its fairness opinion.   The Registration Statement also contains materially incomplete and misleading information concerning certain financial analyses performed by Piper Sandler.

5.   The material information that has been omitted from the Registration Statement must be disclosed prior to the forthcoming shareholder vote in order to allow the shareholders to make an informed decision regarding the Proposed Transaction.

6.   For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violations of Regulation G and Rule 14a-9.  Plaintiff seeks to

enjoin Defendants from holding the shareholders vote currently scheduled for November 22, 2023 on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, all material information discussed below is disclosed to PacWest shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated without corrective disclosures, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.   This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

8.   This Court has personal jurisdiction over each defendant named herein because each defendant is either a corporation that does sufficient business in California or an individual who has sufficient minimum contacts with California to render the exercise of jurisdiction by the California courts permissible under traditional notions of fair play and substantial justice.

9.   Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because PacWest is headquartered in this District.

## PARTIES

10. Plaintiff has owned shares of PacWest common stock since prior to the announcement of the Proposed Transaction complained of herein and continues to own these shares.

11. PacWest is a corporation duly organized and existing under the laws of Delaware and maintains its principal offices in Beverly Hills, California.  PacWest is, and at all relevant times hereto was, listed and traded on the NASDAQ Global Select Market under the symbol "PACW."

12.  Defendant Tanya M. Acker has been a member of the Board since 2016.

13.  Defendant Paul R. Burke has been a member of the Board since 2015.

14.  Defendant Craig A. Carlson has been a member of the Board since 2010.

15.  Defendant John M. Eggemeyer has been a member of the Board since 2000.

16.  Defendant C. William Hosler has been a member of the Board since 2014.

17.  Defendant Polly B. Jessen has been a member of the Board since 2021.

18.  Defendant Susan E. Lester has been a member of the Board since 2003.

19.  Defendant Roger H. Molvar has been a member of the Board since 2014.

20.  Defendant Stephanie B. Mudick has been a member of the Board since 2022.

21.  Defendant Paul W. Taylor has been a member of the Board since 2021 and is the Company's President and Chief Executive Officer.

22.  Defendant Matthew P. Wagner has been a member of the Board since 2000 and is the Executive Chairman of the Board.

23.  The defendants referred to in paragraphs 12-22 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

24.  The defendants referred to in paragraphs 11-22 are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### The Proposed Transaction

25.  On July 25, 2023, PacWest and Banc of California jointly announced that it had entered into the Merger Agreement:

> SANTA ANA, Calif. and BEVERLY HILLS, Calif., July 25, 2023 (GLOBE NEWSWIRE) -- Banc of California, Inc. ("Banc of California") (NYSE: BANC) and PacWest Bancorp ("PacWest") (Nasdaq: PACW) today announced

the signing of a definitive agreement pursuant to which the companies will combine in an all-stock merger transaction. Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, PacWest will merge into Banc of California, and Banc of California, N.A. will merge into Pacific Western Bank. The combined holding company and bank will operate under the Banc of California name and brand following closing of the transaction. Under the terms of the merger agreement, PacWest shareholders will receive 0.6569 of a share of Banc of California common stock for each share of PacWest common stock.

The merger will create the premier California business banking franchise, which will be well-positioned to capitalize on market opportunities and broaden the channels and customers it serves through increased scale and expanded product offerings.

Banc of California also announced today that it has entered into investment agreements with affiliates of funds managed by Warburg Pincus LLC (the "Warburg Investors") and certain investment vehicles, managed or advised by Centerbridge Partners, L.P. and its affiliates (the "Centerbridge Investors" and, together with the Warburg Investors, the "Investors"), which will invest an aggregate of $400 million for newly issued equity securities concurrently with, and subject to, closing of the merger. The proceeds from this capital raise are expected to be utilized in conjunction with other planned actions to reposition the combined company's balance sheet and generate material savings. The combined company will repay ~$13 billion in wholesale borrowings, funded by sales of assets which are fully marked as a result of the transaction, and excess cash. Banc of California, N.A. has entered into a $3.5 billion interest rate swap and a contingent forward asset sale agreement to hedge interest rate risk and lock in proceeds. These repositioning transactions for the combined company will result in a higher net interest margin, estimated to add over 170bps

compared to the pre-restructured balance sheet. The actions result in a CET1 of 10%+ *pro forma*, which includes the cost of swaps purchased and forward sales.

Following closing and the asset sales, the combined company is expected to have approximately $36.1 billion in assets, $25.3 billion in total loans, $30.5 billion in total deposits and more than 70 branches in California.

Upon completion of the proposed transaction, (a) the shares issued to PacWest shareholders in the merger are expected to represent approximately 47% of the outstanding shares of the combined company, (b) the shares issued to the Investors in the equity capital raise transaction discussed above are expected to represent approximately 19% of the outstanding shares of the combined company and (c) the shares of Banc of California common stock that are outstanding immediately prior to completion of the merger are expected to represent approximately 34% of the outstanding shares of the combined company.

Jared Wolff, President and Chief Executive Officer of Banc of California, will retain the same roles at the combined company. John Eggemeyer, who currently serves as the independent Lead Director on the board of PacWest, will become the Chairman of the board of the combined company following the merger. The board of directors of the combined company will consist of 12 directors: eight from the existing Banc of California board, three from the existing PacWest board and one from the Warburg Investors.

"This transformational merger will create a robust, well-capitalized and highly liquid institution poised to deliver exceptional service to even more California businesses and communities," said Mr. Wolff. "We believe both Banc of California and PacWest shareholders will benefit from the compelling economics of the combined company and its enhanced ability to deliver profitable

and sustainable growth. Out of the gate, the combined company will have the strength and market position to support the banking needs of small and medium-size businesses in California and to capitalize on the opportunities created for stronger financial institutions in the wake of the recent banking industry turmoil."

Mr. Wolff added, "Due to the high degree of familiarity between our businesses, we anticipate a smooth integration that will enable us to quickly and effectively capitalize on the long-term opportunities unlocked by the strength of our combined platform. Both institutions follow a client-first, relationship-based approach to serving our clients and communities while emphasizing prudent risk management. We believe that uniting the talent and expertise from both organizations, along with our cultural similarities and deep familiarity with each other's business, will accelerate the execution and delivery of strong and growing franchise value for all stakeholders."

Paul Taylor, President and Chief Executive Officer of PacWest, stated, "This merger is a tremendous opportunity for PacWest's shareholders, customers, communities and employees, representing significant immediate and long-term value beyond PacWest's standalone strategic plan. I am honored and extremely proud of the PacWest team's fortitude over the past several months amidst industry-wide volatility. With the combined strength of both institutions, new capital from investors that are committed to the strategic vision and value creation of this merger, and a proven track record of successful integrations, the combined company will be well-positioned to provide significant value for the long term to all of our constituents."

Todd Schell, who will join the board from Warburg Pincus, noted "We are excited to back the strategic combination of two institutions we know well and respect. The transaction provides an opportunity to

execute a highly accretive balance sheet repositioning which generates substantial incremental earnings and positions the combined company for the next leg of profitable growth."

**Strategic Benefits of the Transactions**

**Enhanced scale and capabilities to serve substantial void in California:** The combined company will be strategically positioned to capitalize on market opportunities in California. It will have operational and financial scale to increase investment in the franchise, including its technology platform, in order to elevate the client experience, improve efficiencies, attract the highest quality talent, and enhance new business development efforts.

**Strong balance sheet**: The combined company will have access to additional liquidity through a targeted balance sheet repositioning at closing, supported by committed capital of $400 million from the Investors, resulting in robust capital levels and a strong liquidity profile.

**Diversified deposit base and loan portfolio:** The combined company will focus on serving small and medium-sized businesses in its footprint through exceptional treasury management services and commercial and real estate lending that leverage Banc of California's and PacWest's mutual strengths in core community banking. Banc of California's niche strengths in healthcare, education, entertainment and warehouse lending, and PacWest's niche expertise in HOA banking services, portfolio lending, equipment lending and leasing, and SBA lending combine for a diversified loan portfolio. The combination also creates a more diverse overall deposit mix by combining complementary deposit specialties.

**Experienced management teams with significant integration experience and deep familiarity:** The

combined leadership team is seasoned with a proven track record of performance and merger integration.

## Financial Benefits of the Merger

The financial benefits of the transaction are compelling, with estimated 2024 EPS and tangible book value accretion of 20+% and ~3%, respectively. The *pro forma* combined company financial metrics are based on Banc of California's stand-alone consensus median analyst estimates, estimated combined company cost synergies, anticipated purchase accounting adjustments, the expected merger closing time-frame, and the capital raise. On a *pro forma* basis, the business is expected to deliver compelling operating and return metrics with cost savings on a fully-phased in basis, including:

- Loan to Deposit Ratio of approximately 85%

- Wholesale Funding Asset Ratio of approximately 8%

- Liquidity Coverage Ratio of 2.0x+

- Common Equity Tier 1 Capital Ratio of approximately 10.0%.

- Tangible Common Equity to Total Asset Ratio of 7.2%

- 4Q24 Run-Rate Cash Return on Average Tangible Common Equity of approximately 13.0%;

- 4Q24 Run-Rate Return on Average Assets of approximately 1.10%;

- Capital generation in excess of 100bps per year; and

- 2024 Estimated EPS range of $1.65–$1.80

## Transaction Details

Banc of California will be the legal acquirer, and Banc of California N.A. will merge with and into Pacific Western Bank, which will take the Banc of California name and apply to become a Federal Reserve member. PacWest

will be the accounting acquirer, with fair value accounting applied to Banc of California's balance sheet at closing. Under the terms of the merger agreement, PacWest shareholders will receive 0.6569 of a share of Banc of California common stock for each share of PacWest common stock. Each outstanding share of 7.75% Fixed Rate Reset Non-Cumulative Perpetual Preferred Stock, Series A, of PacWest will be converted into the right to receive one share of a newly created series of substantially identical preferred stock of Banc of California with the same terms and conditions.

In the equity capital raise transaction, Banc of California will sell approximately (i) 21.8 million shares of its common stock at a purchase price of $12.30 per share and (ii) 10.8 million shares of a new class of its non-voting, common-equivalent stock at a purchase price of $12.30 per share to the Investors. In addition, the Warburg Investors will receive warrants to purchase approximately 15.9 million shares of Banc of California non-voting, common-equivalent stock, and the Centerbridge Investors will receive warrants to purchase approximately 3.0 million shares of Banc of California common stock, each with an exercise price of $15.375 per share, a 25% premium to the price paid on common stock. The warrants carry a term of seven years but are subject to mandatory exercise when the market price reaches $24.60 over a specified period, a 100% premium to the price paid on common stock.

**Timing and Approvals**

The parties expect the closing of the merger to occur in late 2023 or early 2024, subject to satisfaction of closing conditions, including receipt of customary required regulatory approvals and requisite approval by the shareholders of each company, and the concurrent closing of the equity capital raise. The equity capital raise is expected to close concurrently with the merger, subject

to the concurrent closing of the merger and other closing conditions.

## Advisors

J.P. Morgan Securities LLC is acting as financial advisor and rendered a fairness opinion to the board of directors of Banc of California and is acting as sole placement agent to Banc of California. Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to Banc of California. Piper Sandler & Co. is acting as financial advisor to, and rendered a fairness opinion to the board of directors of, PacWest. Sullivan & Cromwell LLP is serving as legal counsel to PacWest. Jefferies LLC is acting as financial advisor to Warburg Pincus and Centerbridge. Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Warburg Pincus, and Simpson Thacher & Bartlett LLP is serving as legal counsel to Centerbridge.[1]

### The Materially Misleading and Incomplete Solicitation Statement

26.   On August 10, 2023, Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.  The Registration Statement solicits the Company's shareholders to vote in favor of the Proposed Transaction. Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning

---

[1] *Banc of California and PacWest Announce Transformational Merger and $400 Million Equity Raise from Warburg Pincus and Centerbridge*, GLOBENEWSWIRE (July 25, 2023), https://www.globenewswire.com/en/news-release/2023/07/25/2710855/13824/en/Banc-of-California-and-PacWest-Announce-Transformational-Merger-and-400-Million-Equity-Raise-from-Warburg-Pincus-and-Centerbridge.html.

whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Material Misrepresentations and/or Omissions Concerning Piper Sandler's Financial Analyses***

27. With respect to Piper Sandler's *Analysis of Precedent Transactions*, the Registration Statement fails to disclose the financial metrics reviewed by Piper Sandler for its analysis.

28. With respect to Piper Sandler's *Net Present Value Analysis* for PacWest, the Registration Statement fails to disclose: (i) the terminal values for PacWest; (ii) the underlying inputs used to derive the 2025 earnings multiples ranging from 6.0x to 10.0x; (iii) the underlying inputs used to derive the multiples of the December 31, 2025 tangible book value ranging from 50% to 130%; and (iv) the basis and assumptions underlying the discount rate ranging from 15.00% to 20.00%.

29. With respect to Piper Sandler's *Net Present Value Analysis* for Banc of California, the Registration Statement fails to disclose: (i) the terminal values for Banc of California; (ii) the underlying inputs used to derive the 2025 earnings multiples ranging from 7.0x to 11.0x; (iii) the underlying inputs used to derive the multiples of the December 31, 2025 tangible book value ranging from 90% to 150%; and (iv) the basis and assumptions underlying the discount rate ranging from 8.0% to 12.0%.

30. In sum, the Registration Statement independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent measure; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading. As the Registration Statement independently contravenes SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the

Registration Statement to garner votes in support of the Proposed Transaction from PacWest shareholders.

31.   Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff will not be able to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**FIRST CAUSE OF ACTION**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)**

32.   Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

33.   Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

34.   As set forth above, the Registration Statement omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a).   SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).

35.   The failure to reconcile the numerous non-GAAP financial measures

included in the Registration Statement violates Regulation G and constitutes a violation of Section 14(a).

## SECOND CAUSE OF ACTION

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

36.  Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

37.  SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading . . . ."  17 C.F.R. § 240.14a-9.

38.  Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading."  17 C.F.R. § 244.100(b).

39.  Defendants have issued the Registration Statement with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, amongst other things, the financial forecasts for the Company.

40.  In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had

reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders, although they could have done so without extraordinary effort.

41.   The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

42.   The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above materially incomplete and misleading.

43.   The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial forecasts.

44. PacWest is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

45.   The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the

Proposed Transaction.

46.   Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## THIRD CAUSE OF ACTION

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

47.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.   The Individual Defendants acted as controlling persons of PacWest within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of PacWest, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.   Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.  In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Registration Statement at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing the Registration Statement.

51. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until the Company discloses the material information discussed above, which has been omitted from the Registration Statement;

B.    In the event that the Proposed Transaction is consummated, rescinding it and setting it aside, or awarding rescissory damages;

C.    Awarding compensatory damages against Defendants, individually and severally, in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law, arising from the Proposed Transaction;

D.    Awarding Plaintiff the costs and disbursements of this action and reasonable allowances for fees and expenses of Plaintiff's counsel and experts; and

E.    Granting Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated: November 10, 2023

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Betsy C. Manifold*
BETSY C. MANIFOLD

Rachele R. Byrd
Alex J. Tramontano
Ferdeza Zekiri
750 B Street, Suite 1820
San Diego, CA 92101
Tel: 619/239-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com
zekiri@whafh.com

Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Tel: 212/545-4620
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*